IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DERRICK GIBSON, | : Civil No. 3:22-cv-1538 |
| Plaintiff | : (Judge Mariani) |
| v. | : |
| SUPERINTENDENT BERNADETTE MASON, *et al.*, | : |
| Defendants | : |

**MEMORANDUM**

Plaintiff Derrick Gibson ("Gibson"), an inmate in the custody of the Pennsylvania Department of Corrections ("DOC"), initiated this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). The matter is proceeding via an amended complaint. (Doc. 22). Named as Defendants are several individuals employed by the DOC, Dr. Peter Baddick, Sheriff Brian Tobin[1], and unidentified John and Jane Doe individuals. Presently pending before the Court is Defendant Dr. Baddick's Rule 12(b) motion to dismiss. (Doc. 45). For the reasons set forth below, the Court will grant the motion.

---

[1] By Memorandum and Order dated January 12, 2024, the Court granted Defendant Tobin's motion to dismiss and for summary judgment. (Docs. 56, 57).

I.   **Allegations of the Amended Complaint**[2]

The allegations of the amended complaint relate to various instances of abuse between August 2020 and September 2022 when Gibson was housed at the State Correctional Institution at Frackville ("SCI-Frackville"), the State Correctional Institution at Mahanoy ("SCI-Mahanoy"), and the State Correctional Institution at Phoenix ("SCI-Phoenix"). (Doc. 22).

Gibson asserts that he was transported to the Schuylkill County Courthouse on August 19, 2022, for a court proceeding. (*Id.* ¶ 78). He alleges that the accompanying correctional officers assaulted him and subjected him to unnecessary excessive force in the Schuylkill County Courthouse bathroom while he was in restraints. (*Id.*). As a result, Gibson asserts that he suffered from head and chest pain, a concussion, and difficulty breathing. (*Id.*).

Gibson alleges that he was transported back to SCI-Frackville and was not taken to an outside hospital. (*Id.* ¶ 79). While in the transport van, Gibson alleges that Correctional Officers John Doe 1-2 pulled down his pants and underwear, exposing his buttocks, anus, and genitals. (*Id.* ¶ 80). He maintains that these acts were humiliating and degrading. (*Id.*).

Once he arrived at SCI-Frackville, Gibson asserts that he was removed from the van, in restraints, and was "suffering concussion symptoms, head, chest and back pain."

---

[2]   The Court only includes the allegations that pertain to Defendant Dr. Baddick.

2

(*Id.* ¶ 81). He maintains that his pants and underwear were still around his ankles, exposing his private areas, and that he was transported through the facility causing further humiliation. (*Id.*). Gibson was escorted to medical triage and was treated by Defendant Dr. Baddick. (*Id.*). He states that Defendant Dr. Baddick pulled up his pants and underwear. (*Id.*). Gibson reported a violation of the Prison Rape Elimination Act ("PREA") to Dr. Baddick who "immediately dismissed this critical information and duty to report it saying to SCI-Frackville officers '[h]e's alright, take him back to his cell in the RHU.'" (*Id.*). Gibson contends that Defendant Dr. Baddick's actions were a "malicious conspiracy." (*Id.*).

Gibson avers that he reported the alleged violation of the PREA to another prison official and was transported to the Reading Hospital "for proper investigation." (*Id.* ¶ 82).

In September of 2022, Gibson was interviewed by DOC officials at SCI-Mahanoy regarding his PREA complaint. (*Id.* ¶ 84). He maintains that the PREA allegations were not properly investigated. (*Id.*).

## II. Legal Standard

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the

3

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations,...a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

> "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## III. Discussion

### A. Eighth Amendment Inadequate Medical Care Claim

Gibson alleges that Defendant Dr. Baddick was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners. *Fuentes v. Wagner*, 206 F.3d 335, 344 (3d Cir. 2000). In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to

5

those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). To establish an Eighth Amendment claim based on a prison's denial of medical care, an inmate must allege acts or omissions by prison officials that were sufficiently harmful to establish deliberate indifference to a serious medical need. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). The relevant inquiry is whether the defendant: (1) was subjectively deliberately indifferent (2) to the plaintiff's objectively serious medical needs. *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994); *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015).

The "deliberate indifference" prong of the applicable Eighth Amendment analysis requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Circumstantial evidence can establish subjective knowledge on the part of the defendant if it shows that the excessive risk was so obvious that the official must have known about it. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at 842). The Third Circuit has found deliberate indifference when a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197.

The second prong of the Eighth Amendment inquiry is whether the plaintiff's medical needs were serious. A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). Not every condition is a serious medical need; instead, the serious medical need element contemplates a condition of urgency, namely, one that may produce death, degeneration, or extreme pain. *See id.*

Moreover, because only egregious acts or omissions can violate this standard, mere medical malpractice cannot result in an Eighth Amendment violation. *White v. Napoleon*, 897 F.2d 103, 108-10 (3d Cir. 1990); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[M]edical malpractice does not become a constitutional violation merely because the victim is a prisoner."). The Supreme Court has held that negligence or inadvertence alone do not rise to the level of a constitutional violation. *Whitley v. Albers*, 475 U.S. 312 (1986).

Prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients, *see Young v. Kazmerski*, 266 F. App'x 191, 194 (3d Cir. 2008), and a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. *See White*, 897 F.2d at 108-10. Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. *See Brown v. Borough of*

7

*Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."); *Pearson v. Prison Health Servs.*, 850 F.3d 528, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care.").

Here, Gibson fails to demonstrate that Defendant Dr. Baddick was deliberately indifferent to his serious medical needs. Gibson alleges that Defendant Dr. Baddick treated him in medical triage and determined that he did not need any additional medical treatment before sending him to the RHU. Notably, a misdiagnosis or preference for a certain type of treatment will not alone rise to the level of deliberate indifference. *See, e.g., United States ex rel. Walker v. Fayette County, Pennsylvania*, 599 F.2d 573, 575 (3d Cir.1979); *Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment."). Gibson had one encounter with Defendant Dr. Baddick. The amended complaint demonstrates that Gibson received immediate medical attention when he arrived back at SCI-Frackville. Defendant Dr. Baddick pulled up Gibson's pants and underwear, performed a medical assessment, and cleared him to return to the RHU. Gibson's belief that he should have received different treatment constitutes a "mere disagreement as to the proper medical treatment," and is not an actionable Eighth Amendment claim. *Lanzaro*, 834

F.2d at 346.  Additionally, insofar as Gibson asserts that Defendant Dr. Baddick's professional judgment was deficient, this also is not enough to rise to the level of a constitutional violation, and courts will not second guess whether a particular course of treatment is adequate or proper.  See *Parham v. Johnson*, 126 F.3d 454, 458 n.7 (3d Cir. 1997) (citing *Inmates of Allegheny Cnty. Jail*, 612 F.2d at 762).  The Court will dismiss Gibson's Eighth Amendment inadequate medical care claim against Defendant Dr. Baddick for failure to state a claim upon which relief may be granted.

To the extent that Gibson alleges violations of the PREA, it does not provide a private right of action and, therefore, Gibson may not assert a civil PREA claim.  See *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283-85 (2002); *Williams v. Wetzel*, 827 F. App'x 158, 162 (3d Cir. 2020).  Accordingly, this claim will be dismissed.

**B.     Remaining Claims against Defendant Dr. Baddick**

Defendant Dr. Baddick next argues that Gibson's claims of civil conspiracy, retaliation, and violations of the Fourteenth Amendment's due process and equal protection clauses must be dismissed based on lack of personal involvement.

In order to state an actionable civil rights claim, a plaintiff must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.  See *Groman v. Township of*

9

*Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995); *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1141-42 (3d Cir. 1990). Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362 (1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208.

A review of the amended complaint reveals that the only factual allegations against Defendant Dr. Baddick are as follows:

> Defendant Dr. Baddick then pulled his pants and underwear up on him. Plaintiff then reported a PREA allegation to Dr. Baddick who immediately dismissed this critical information and duty to report it saying to SCI-Frackville officers "He's alright, take him back to his cell in the RHU."

10

(Doc. 22 ¶ 81). Gibson generally alleges that Defendant Dr. Baddick engaged in a conspiracy and violated his First and Fourteenth Amendment rights. (*Id.*, Counts II, V, VIII, VIIII, X).

Gibson's vague and conclusory allegations fail to satisfy the specific pleading requirements set forth above. He merely contends that Defendant Dr. Baddick's actions amounted to a "malicious conspiracy." (Doc. 22 ¶ 81). Gibson does not identify the individuals that Defendant Dr. Baddick purportedly conspired with, and his conspiracy claim is entirely conclusory and speculative in nature. Additionally, Gibson does not set forth any allegations in support of a First Amendment retaliation claim or Fourteenth Amendment due process and equal protection claims. Without specific factual allegations, it is impossible to conclude that Defendant Dr. Baddick deprived Gibson of his constitutional rights. Finally, any attempt to hold Defendant Dr. Baddick liable based on his supervisory role must fail. (*See* Doc. 53, p. 7). It is well-established that officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *See Rode*, 845 F.2d at 1207. Defendant Dr. Baddick is entitled to dismissal from this action based on his lack of personal involvement in these alleged violations of Gibson's rights.

### C. Medical Negligence Claim

Defendant Dr. Baddick also moves to dismiss the state law professional negligence claim based on Gibson's failure to produce a written statement by an appropriate licensed professional as required by the Pennsylvania Rules of Civil Procedure.

In Pennsylvania, medical negligence, or medical malpractice, is defined as "the unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services." *Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1145 (Pa. 2003) (citing *Hodgson v. Bigelow*, 7 A.2d 338 (Pa. 1939)). The existence of an injury, by itself, does not prove a doctor's negligence. *Mitchell v. Shikora*, 209 A.3d 307, 315 (Pa. 2019) (citations omitted). Rather, to establish a cause of action for negligence under Pennsylvania law, a plaintiff must prove the following elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages. *See Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005) (citing *In re TMI*, 67 F.3d 1103, 1117 (3d Cir. 1995)).

Pennsylvania Rule of Civil Procedure 1042.3 requires a plaintiff alleging professional negligence to file a certificate of merit ("COM") within 60 days of filing the complaint. PA. R. CIV. P. 1042.3. The certificate must include one of the following: a written attestation by "an

appropriate licensed professional" that there is a "reasonable probability that the care, skill or knowledge exercised or exhibited" by the defendant "fell outside acceptable professional standards," and that this was the cause of the plaintiff's injuries; a statement that the claim against the defendant is based only on the professional negligence of those for whom the defendant is responsible; or a statement that expert testimony is unnecessary for the plaintiff's claim to proceed. PA. R. CIV. P. 1042.3(a)(1)-(3). Failure to file a certificate of merit is fatal to a plaintiff's claim. PA. R. CIV. P. 1042.7. The requirements of Rule 1042.3 are substantive in nature and, therefore, federal courts in Pennsylvania must apply these prerequisites of Pennsylvania law when assessing the merits of a medical malpractice claim. *See Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 262-65 (3d Cir. 2011); *Iwanejko v. Cohen & Grigsby, P.C.*, 249 F. App'x 938, 944 (3d Cir. 2007). This requirement applies with equal force to counseled complaints and to *pro se* medical malpractice actions brought under state law. *See Hodge v. Dep't of Justice*, 372 F. App'x 264, 267 (3d Cir. 2010) (affirming district court's dismissal of medical negligence claim for failure to file a certificate of merit).

The Pennsylvania Supreme Court has noted that "[b]ecause the negligence of a physician encompasses matters not within the ordinary knowledge and experience of laypersons[,] a medical malpractice plaintiff must present expert testimony to establish the applicable standard of care, the deviation from that standard, causation and the extent of

13

the injury." *Toogood*, 824 A.2d at 1145.  A very narrow exception applies "where the matter is so simple or the lack of skill or care is so obvious as to be within the range of experience and comprehension of even non-professional persons." *Hightower-Warren v. Silk*, 698 A.2d 52, 54 n.1 (Pa. 1997).

On May 30, 2023, counsel for Defendant Dr. Baddick mailed Gibson a Notice of Intent to Dismiss Pursuant to Rule 1042.11.  (*See* Doc. 44).  Gibson's complaint was filed on or about October 3, 2022.  Pursuant to Rule 1042.3, Gibson was required to "file with the complaint or within sixty days after the filing of the complaint, a certificate of merit signed by the attorney or party."  Gibson filed a purported COM on April 5, 2023.  (Doc. 29).  In his COM, Gibson simply summarizes the language of Rule 1042.3(a)(1).  (*Id.* at p. 1).  Gibson's COM fails to comply with the requirements of Pennsylvania Rule 1042.3.  He has failed to file a COM with an attached copy of a licensed medical professional's written statement that there exists a reasonable probability that the care provided fell outside acceptable professional standards.  *See* PA. R. CIV. P. 1042.3(a)(1) & (e).  Moreover, Gibson may not evade the COM requirement by arguing that compliance with the Rule is unreasonable. (*See* Doc. 53, p. 9).  In proffering only his own personal, lay opinion, and reciting the language of Rule 1042.3(a)(1), Gibson has clearly failed to substantially comply with the requirements of Rule 1042.3(a)(1).  Gibson's failure to attach a written statement from a

licensed medical professional to his COM further underscores the utter lack of expert support for his malpractice claim against Defendant Dr. Baddick.

Gibson requires expert testimony to establish that Defendant Dr. Baddick was negligent in providing medical care. Gibson's claim concerns issues relating to the standard of care, which he simply cannot establish without expert testimony. *See Toogood*, 824 A.2d at 1151. This is not a case where a licensed medical professional's deviation from the standard of care is obvious and within the realm of a layperson. *See, e.g., Hakeem v. Salaam*, 260 F. App'x 432, 435 (3d Cir. 2008) ("Absent expert opinion that the [defendant's] treatment deviated from acceptable medical standards, a reasonable fact-finder could not conclude that the [defendant] acted negligently."). Accordingly, Defendant Dr. Baddick's motion to dismiss the medical malpractice claim will be granted based on Gibson's failure to file a COM that substantially complies with the requirements of Rule 1042.3. *See, e.g., Booker v. United States*, 366 F. App'x 425, 427 (3d Cir. 2010) (the usual consequence for failing to file a certificate of merit that complies with Rule 1042.3 is dismissal of the claim without prejudice).

## IV. Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal…should receive leave to amend unless amendment would be inequitable or futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). Gibson's claims against Defendant Dr. Baddick

are factually and legally flawed. Moreover, because the exceptions to filing a certificate of merit under Pennsylvania law do not apply to Gibson's claims, his claim fails as a matter of law. The Court thus concludes that allowing further leave to amend would be both futile and inequitable. *See Grayson*, 293 F.3d at 108; *see also Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (where inmate plaintiff "has already had two chances to tell his story…giving him further leave to amend would be futile.").

## V. Conclusion

The Court will grant Defendant Dr. Baddick's motion (Doc. 45) to dismiss. A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: January 16, 2024