**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DERRICK GIBSON, | : | Civil No. 3:22-cv-1538 |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| SUPERINTENDENT BERNADETTE | : | |
| MASON, *et al.*, | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM**

Plaintiff Derrick Gibson ("Gibson"), an inmate in the custody of the Pennsylvania

Department of Corrections ("DOC"), initiated this civil rights action pursuant to 42 U.S.C. §

1983. (Doc. 1). The matter is proceeding via a second amended complaint. (Doc. 63).

Named as Defendants are Superintendent Bernadette Mason, Deputy Superintendent

Charles Stetler, Hearing Examiner Dennis Weiderhold, Lieutenant Wagner, Lieutenant Lear,

Correctional Officer Robert Derr, Correctional Officer Swartz, Correctional Officer

Mayernick, and Nurse Julie Rodak (collectively, the "Corrections Defendants").[1] Presently

pending before the Court is the Corrections Defendants' motion (Doc. 68) to dismiss

---

[1]    Gibson also named Nurse Benjamin Liebersohn as a Defendant in this action.  Nurse
Liebersohn was a contracted medical professional and was not employed by the DOC; thus, defense
counsel does not represent Liebersohn in this matter.  (Doc. 69, pp. 14-15 n. 2).  Defense counsel has
informed the Court that Benjamin Liebersohn has passed away.  (*Id.*).  As set forth herein, the claims
against Liebersohn will be dismissed as he is not a proper party to this action.

pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion (Doc. 68) will be granted in part and denied in part.

## I. Allegations of the Second Amended Complaint

At all relevant times, Gibson was housed at the State Correctional Institution, Mahanoy, Pennsylvania ("SCI-Mahanoy"). (Doc. 63 ¶ 17). The allegations of the second amended complaint largely stem from an incident that purportedly occurred on December 5, 2020. The allegations are as follows.

On December 5, 2020, between 6:00 a.m. and 7:00 a.m., Gibson alleges that Defendant Mayernick arrived at his prison cell door, called him a "snitch", and threatened to kill him. (*Id.* ¶ 19). Gibson claims that he attempted to report Mayernick's threats to a Lieutenant. (*Id.* ¶ 21). Also on December 5, 2020, between 9:00 a.m. and 10:00 a.m., Gibson alleges that Mayernick again arrived at his prison cell door with Defendant Nurse Rodak and called him a "snitch." (*Id.* ¶ 22). Gibson asserts that this conduct placed him in "fear of his life and of retaliation" because he previously filed a grievance against Rodak and accused Rodak of falsifying his signature on inmate cash slips, and because of a previous incident of verbal threats and oleoresin capsicum ("OC") spray involving Mayernick. (*Id.* ¶ 23).

Then, on December 5, 2020, between 10:00 a.m. and 11:00 a.m., Defendant Correctional Officer Derr arrived at Gibson's cell door and inquired as to why he snitched on

2

Rodak. (*Id.* ¶ 24). Defendant Derr later returned to Gibson's cell and verbally threatened him. (*Id.* ¶ 25).

On December 5, 2020, between 11:00 a.m. and 12:00 p.m., Gibson alleges that Defendants Mayernick, Derr, Swartz, Wagner, Lear, and Nurse Benjamin Liebersohn arrived at his cell. (*Id.* ¶ 27). He asserts that they arrived with OC spray, a restraint chair, scissors, and a tether for a planned use of force. (*Id.*). Gibson alleges that Defendant Lear turned off the water in his cell, the contents of his cell were removed, Defendant Derr covered the camera in his cell, and the incident was recorded on a handheld camera. (*Id.* ¶¶ 28-30). Defendants Derr and Swartz then allegedly handcuffed and tethered Gibson and Defendant Wagner cut off his clothes off. (*Id.* ¶ 31). Defendants Derr and Swartz placed Gibson in the restraint chair and Defendant Wagner allegedly deployed OC spray in his face and nose. (*Id.*). Gibson asserts that Defendants Derr and Swartz continued to restrain him, and Swartz placed a spit hood over his face. (*Id.* ¶ 32).

Gibson alleges that he had difficulty breathing but Defendants refused to provide immediate medical treatment. (*Id.* ¶ 33). After twenty-eight minutes, Gibson received medical attention. (*Id.*). He avers that he was secured tightly in the restraint chair for eight hours, his blood circulation was off, and the restraint chair, bedframe, and prison cell walls had OC spray on them. (*Id.*). During this incident, Gibson alleges that Defendants Wagner, Derr, and Swartz used excessive force against him; Defendants Wagner, Mayernick, Derr, Swartz, and Lear exhibited deliberate indifference to his medical needs, and failed to

intervene; and Defendants Mayernick, Rodak, and Derr exhibited deliberate indifference and retaliated against him for filing grievances by calling him a "snitch" and verbally threatening him.  (*Id.* at p. 8 ¶¶ 37-38, 40-41).

From December 5, 2020 through December 10, 2020, Gibson alleges that he was in a restraint chair in a cold cell, and suffered from burning from the OC spray incident.  (*Id.* ¶ 34).  Gibson contends that Defendant Superintendent Mason and Defendant Deputy Superintendent Stetler allowed him to remain restrained after review of the December 5, 2020 incident.  (*Id.*).  He further alleges that Defendants Mason, Stetler, and Wagner failed to intervene with respect to the placement in restraints, and that Defendants Mason and Stetler were aware of unspecified prior occasions of abuse against him by Mayernick, Swartz, and Rodak, and failed to act.  (*Id.* at pp. 7-8 ¶ 36; *Id.* at p. 9 ¶ 39).  Gibson asserts that Defendants Mason and Stetler were also aware of Mayernick's alleged involvement in the death of another inmate, and that Defendants Mason and Stetler failed to properly supervise, train, reprimand, and discipline the Defendants and other correctional officers.  (*Id.* at p. 4 ¶ 20; *Id.* at pp. 7-8 ¶ 36; *Id.* at p. 10 ¶ 41).

Next, Gibson alleges that Defendants Mayernick, Wager, and Derr issued false misconducts against him.  (*Id.* at p. 7 ¶ 35; *Id.* at p. 10 ¶ 40).  He avers that his rights were violated during a misconduct hearing conducted by Defendant Hearing Examiner Weiderhold, and that Defendants Mason and Weiderhold failed to correct the alleged false misconduct reports issued in relation to the December 5, 2020 events.  (*Id.*).

Lastly, Gibson asserts a medical malpractice claim, and failure to provide adequate medical care claim, against Defendant Nurse Rodak and contracted Nurse Liebersohn. (*Id.* ¶ 43).

## II.   Legal Standard

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations,…a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v.*

*Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation

marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to
> determine the sufficiency of a complaint:  First, the court must take note of the
> elements a plaintiff must plead to state a claim.  Second, the court should
> identify allegations that, because they are no more than conclusions, are not
> entitled to the assumption of truth.  Finally, where there are well-pleaded
> factual allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged - but it has not show[n] - that the

pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks

omitted).  This "plausibility" determination will be a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense."  *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court

must permit a curative amendment unless such an amendment would be inequitable or

futile."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a
> defendant moves to dismiss it, unless the district court finds that amendment
> would be inequitable or futile, the court must inform the plaintiff that he or she
> has leave to amend the complaint within a set period of time.

*Id.*

## II.    Discussion

Defendants assert that the Court should dismiss Gibson's second amended complaint because: (1) it violates Rules 8 and 20 of the Federal Rules of Civil Procedure; (2) Gibson's Eighth Amendment claims fail; (3) Gibson's First Amendment retaliation claim fails; (4) the supervisory liability claim against Mason and Stetler fails to state a claim upon which relief may be granted; (5) Gibson's conspiracy claim fails; and (6) Gibson's medical malpractice claim against Rodak fails. (Doc. 69). The Court considers each argument below.

### A.    Federal Rules of Civil Procedure 8 and 20

Defendants first seek dismissal of Gibson's second amended complaint on the ground that it fails to comply with Rules 8 and 20 of the Federal Rules of Civil Procedure. (Doc. 69, pp. 21-24). Federal Rule of Civil Procedure 8 establishes the general rules of pleading. *See* FED. R. CIV. P. 8. Rule 8(a) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 8(d)(1) speaks to factual allegations, requiring that "[e]ach allegation…be simple, concise, and direct." FED. R. CIV. P. 8(d)(1). Taken together, Rules 8(a) and 8(d)(1) "underscore the emphasis placed on clarity and brevity by the federal pleading rules." *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 702 (3d Cir. 1996) (citation omitted). The complaint "must not be 'so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by'" Rule 8. *Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64

7

(3d Cir. 2008) (quoting *Phillips*, 515 F.3d at 233).  Dismissal pursuant to Rule 8, however, is

generally reserved for situations where the complaint is "so confused, ambiguous, vague, or

otherwise unintelligible that its true substance, if any, is well disguised."  *Simmons v.*

*Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (quotations omitted).

      Defendants maintain that Gibson's second amended complaint violates Rule 8

because it is not simple and concise and "consist[s] of a conglomerate of allegations against

several Defendants within single paragraphs."  (Doc. 69, p. 21).  Upon review, the Court

finds that the second amended complaint does not violate Rule 8.  It is not "so confused,

ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well

disguised."  *See Simmons*, 49 F.3d at 86.  Nor is it so difficult to follow that it is impossible

to identify the claims for relief.  *See Folk v. Bureau of Prisons*, 2021 WL 3521143, at *3 (3d

Cir. Aug. 11, 2021) (concluding that the dismissal of the inmate-plaintiff's 247-page second

amended complaint pursuant to Rule 8 was proper because it "span[ned] seven years of

encounters with dozens of people, [was] dense, very difficult to follow, and lack[ed] any

consistent structure").  The Court, therefore, declines to grant Defendants' motion to dismiss

on the basis that the second amended complaint violates the provisions of Rule 8 set forth

above.

      Next, pursuant to Rule 20, a plaintiff may join multiple defendants in a single case if

"(1) any right to relief is asserted against them jointly, severally, or in the alternative with

respect to or arising out of the same transaction, occurrence, or series of transactions or

occurrences," and (2) "any question of law or fact common to all defendants will arise in the action." *See* FED. R. CIV. P. 20(a)(2). "For courts applying Rule 20 and related rules, 'the impulse is toward entertaining the broadest scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966)). Claims "only need to share a single question of law or fact to meet this 'very low threshold.'" *See Price v. New Castle Police Dep't,* No. 2:20-cv-1274-RJC, 2021 WL 322228, at *4 (W.D. Pa. Feb. 1, 2021) (quotations omitted).

Defendants assert that "at least some of the allegations advanced in Plaintiff's amended complaint do not arise out of the same transaction, occurrence or series of transactions or occurrences." (Doc. 69, p. 22). However, examining the entire second amended complaint, the Court finds that it does not violate Rule 20. Even if the Court were to conclude that the second amended complaint violates Rule 20, that is not "an independent basis to dismiss a complaint." *Folk*, 2021 WL 3521143, at *3 n.1 (citing FED. R. CIV. P. 21). The Court, therefore, declines to grant Defendants' motion to dismiss on this basis.

## B. Eighth Amendment Claims

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners. *See Wharton v. Danberg*, 854 F.3d 234, 247 (3d Cir. 2017). There are several types of Eighth Amendment claims, including claims alleging: denial of, or inadequate

9

access to, medical care; exposure to adverse conditions of confinement; the use of excessive force; and failure to protect from assaults by other inmates.  An Eighth Amendment claim includes both objective and subjective components.  *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  Under the objective prong, the Court must consider "if the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Wilson*, 501 U.S. at 298).  However, "[w]hat is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause depends upon the claim at issue."  *Id.*  The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind."  *Wilson*, 501 U.S. at 298.

### 1. *Excessive Force Claim—Use of OC Spray & Restraint Chair*

Gibson claims excessive force in violation of the Eighth Amendment against Defendants Wagner, Derr, and Swartz in relation to the December 5, 2020 incident involving OC spray and a restraint chair.  (Doc. 63 ¶¶ 31-33, 37).  The Third Circuit Court of Appeals identified "the pivotal inquiry in reviewing an inmate's § 1983 claim for excessive force is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  *Ricks v. Shover*, 891 F.3d 468, 480 (3d Cir. 2018) (quoting *Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002), *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000)).  The factors used to determine whether the force applied was excessive include: "(1) 'the need for the application of force'; (2) 'the relationship between

10

the need and the amount of force that was used'; (3) 'the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'" *Brooks*, 204 F.3d at 106 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)).  The inquiry is driven "by the extent of the force and the circumstances in which it is applied; not by the resulting injuries."  *Smith*, 293 F.3d at 648. "The use of chemical agents to subdue recalcitrant prisoners is not cruel and unusual when reasonably necessary."  *Gibson v. Flemming*, 837 F. App'x 860, 862 (3d Cir. 2020) (quoting *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984)); *see also Passmore v. Ianello*, 528 F. App'x 144, 147 (3d Cir. 2013) (per curiam) (explaining that the use of chemical agents is not a *per se* constitutional violation).

Claims related to the use of restraints are evaluated under the standard applicable to excessive force claims.  *Young v. Martin*, 801 F.3d 172, 180 (3d Cir. 2015).  With respect to mechanical restraints, the Supreme Court identified the following criteria "relevant to the use of excessive force test, holding that (1) where the inmate had 'already been subdued, handcuffed, [and] placed in leg irons,' and (2) there was a 'clear lack of an emergency situation' such that '[a]ny safety concerns had long since abated,' then (3) subjecting the inmate to 'substantial risk of physical harm' and 'unnecessary pain' serves no penological justification."  *Young*, 801 F.3d at 180 (quoting *Hope v. Pelzer*, 536 U.S. 730, 738 (2002)).

Gibson alleges that Defendants Mayernick, Derr, Swartz, and Lear arrived at his cell on December 5, 2020, with OC spray, a restraint chair, scissors, and a tether, for a planned use of force to remove Gibson from his cell. (Doc. 63 ¶ 27). He alleges that Defendant Lear turned off the water in his cell, the contents of his cell were removed, and the entire incident was recorded on a handheld camera. (*Id.* ¶¶ 28-30). Defendants Derr and Swartz allegedly handcuffed Gibson, Defendant Wagner cut off Gibson's clothes, Derr and Swartz placed Gibson in a restraint chair, and Wagner deployed OC spray. (*Id.* ¶ 31). Gibson asserts that Defendants Derr and Swartz continued to restrain him while Swartz placed a spit hood over his face. (*Id.* ¶ 32). As a result of this incident, Gibson alleges that he suffered from difficulty breathing, a bloody nose, body pain, and stress. (*Id.* ¶¶ 33-34). Following this incident, Gibson alleges that he was placed in a restraint chair for a period of five days.

The second amended complaint makes clear that Defendants Mayernick, Derr, Swartz, and Lear entered Gibson's cell with OC spray and a restraint chair, as part of a planned use of force. The second amended complaint also clearly alleges that Gibson was placed in a restraint chair for five days, and that the restraints were painful, unnecessary, and constituted excessive force. However, it is not clear why Defendants initiated this planned use of force and why Gibson was removed from his cell and placed in restraints for five days. For example, there are no allegations that Gibson failed to comply with orders or was otherwise uncooperative. Nor are there allegations that Gibson displayed signs of

imminent violence, such that the restraints were necessary to prevent Gibson from harming himself or prison staff.  It is likewise not clear what level of force, if any, was needed in order to control Gibson.  Gibson only alleges that Defendants utilized OC spray and placed him in a restraint chair as part of a planned use of force, but there are no allegations as to what transpired, if anything, before this occurred.  It is possible to interpret Gibson's allegations to mean that Defendants did not attempt to secure his compliance in any other manner before deploying the OC spray and placing him in the restraint chair.  If such were the case, then the use of force may not have been necessary or may have been excessive under the circumstances.  As such, when viewed in the light of the foregoing liberal pleading standards, the Court finds that the allegations in the second amended complaint, when taken as true, state a plausible excessive force claim and the motion to dismiss will be denied as to this claim.

### 2.  *Inadequate Medical Care Claim*

In order to establish an Eighth Amendment medical claim, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cnty. Correctional Facility*, 318 F.3d 575, 582 (3d. Cir. 2003) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).  In

13

addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Id.* (citation omitted).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. *See Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988); *see also McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977); *Smart v. Villar*, 547 F.2d 112, 113 (10th Cir. 1976), *cert. denied*, 450 U.S. 1041 (1981). Moreover, "[i]f a prisoner is under the care of medical experts...a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Accordingly, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official...will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.*

14

In the second amended complaint, Gibson alleges that after the use of OC spray and placement in restraints, he received medical treatment. (Doc. 63 ¶ 33). Gibson maintains that the medical care was delayed for twenty-eight minutes. (*Id.*).

First, Gibson has failed to state a claim against Defendants Wagner, Mayernick, Derr, Swartz, and Lear. By Gibson's own averments, these Defendants are not medical providers and have not treated him. Because Defendants Wagner, Mayernick, Derr, Swartz, and Lear are not medical personnel, they cannot be considered deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1991). Moreover, it is not clear that Gibson's injuries rose to the level of serious medical needs, nor does the second amended complaint support an inference that the non-medical Defendants were deliberately indifferent to any such needs. Indeed, there are no allegations in the second amended complaint that the non-medical Defendants had "reason to believe (or actual knowledge) that prison doctors or their assistants [were] mistreating (or not treating) [him]." *Spruill*, 372 F.3d at 236. Accordingly, the Court will grant Defendants' motion to dismiss the Eighth Amendment inadequate medical care claim against Wagner, Mayernick, Derr, Swartz, and Lear.

Next, Gibson has also failed to state an inadequate medical care claim against Defendant Nurse Rodak. He does not allege that Defendant Rodak intentionally refused to provide medical treatment, delayed the treatment, or personally prevented Gibson from

receiving such treatment. Notably, Gibson does not allege that Defendant Rodak was present during the December 5, 2020 incident, such that she could have provided medical care. He only sets forth a general allegation that Defendant Rodak "failed to provide proper emergency and medical care." (Doc. 63 ¶ 43). Moreover, Gibson acknowledges that he received medical care, though he claims the care was delayed for twenty-eight minutes. Such allegation does not plausibly allege deliberate indifference. *See Passmore*, 528 F. App'x at 148-49 (finding twenty-minute delay before allowing plaintiff to shower and receive medical care after being pepper sprayed did not constitute deliberate indifference to a serious medical need); *McCamey*, 2016 WL 5816821, at *5 (allowing plaintiff to shower fifteen to twenty minutes after being pepper sprayed showed that defendants were not deliberately indifferent to the effects of the spray).

Additionally, Gibson's allegations fail to state a serious medical need. "[T]he mere fact that the plaintiff suffered injuries from an officer's use of typical detention tools which may cause pain, e.g., pepper spray and handcuffs, does not automatically convert any injuries to 'serious medical conditions.'" *Klein v. Madison*, 374 F. Supp. 3d 389, 424 (E.D. Pa. 2019); *see also McCamey*, 2016 WL 5816821, at *5 (finding plaintiff failed to allege a serious medical with respect to pepper spray incident because "[i]t is expected that there would be pain and discomfort after being exposed to pepper-spray" and noting that "simply alleging 'excruciating pain' is insufficient"); *Wade v. Colaner*, Civ. A. No. 06-3715, 2009 WL 776985, at *11 (D.N.J. Mar. 20, 2009) ("[T]he normal effects of pepper spray on a person,

i.e. burning, are not of the kind to constitute a serious medical need.  Indeed, "[t]he nature of

pepper spray is to cause pain that dissipates without causing serious injury.") (citation

omitted).  There simply are not enough facts in the second amended complaint to support a

plausible deliberate indifference to medical needs claim.  The Court will grant Defendants'

motion to dismiss the Eighth Amendment inadequate medical care claim lodged against

Nurse Rodak.

### 3.   *Failure to Protect and Failure to Intervene Claims*

Gibson generally alleges that "[a]ll of the Defendants fail[ed] to intervene."  (Doc. 63

¶ 42).  In order for a plaintiff to prove a constitutional violation in a failure-to-protect case,

the plaintiff must produce sufficient evidence showing that: (1) he was incarcerated under

conditions posing a substantial risk of serious harm; (2) each defendant was deliberately

indifferent to that risk; and (3) the defendant's deliberate indifference caused him harm.

*Travillion v. Wetzel*, 765 F. App'x 785, 790 (3d Cir. 2019) (citing *Bistrian v. Levi*, 696 F.3d

352, 367 (3d Cir. 2012); *Hamilton v. Levy*, 117 F.3d 742, 746 (3d Cir. 1997)).  Deliberate

indifference requires that the prison official "knows of and disregards an excessive risk to

inmate health or safety; the official must both be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference."  *Farmer*, 511 U.S. at 837.  Consequently, prison officials can avoid liability by

showing they were unaware of the danger, or they believed the risk was insubstantial or

nonexistent.  *Bistrian*, 696 F.3d at 367.  "In addition, prison officials who actually knew of a

substantial risk to inmate health or safety may be found free from liability if they responded

reasonably to the risk, even if the harm ultimately was not averted." *Id.* (quoting *Farmer*,

511 U.S. at 844) (internal quotation marks omitted)).

To prevail on a failure to intervene claim, a plaintiff must show: "(1) that the

defendant failed or refused to intervene when a constitutional violation took place in his or

her presence or with his or her knowledge; and (2) there was a 'realistic and reasonable

opportunity to intervene.'" *Knight v. Walton*, No. 2:12-CV-984, 2014 WL 1316115, at *8

(W.D. Pa. Mar. 28, 2014) (quoting *Smith*, 293 F.3d at 651) (citation omitted).  The Third

Circuit Court of Appeals has held that a corrections officer who fails to intervene when other

officers are beating an inmate may be liable on a failure-to-protect claim if the officer had "a

realistic and reasonable opportunity to intervene" and "simply refused to do so." *Smith*, 293

F.3d at 650-51.

With respect to the December 5, 2020 use of OC spray and restraint chair incident, it

does not appear that Defendants Mayernick, Mason, or Stetler could have had any

opportunity to intervene.  Gibson does not allege that Mayernick, Mason, or Stetler were

present for the entire incident, and he does not even allege that Mason and Stetler were

present at all.  Moreover, the allegations do not establish that Gibson received significant

injures as a result of the December 5, 2020 incident, such that any Defendant should have

intervened or protected Gibson.  Likewise, regarding Gibson's claim that Defendants Mason

and Stetler authorized that he remain in restraints, he does not allege that they had

adequate notice of a substantial risk of serious harm and that they failed to protect or intervene against that risk.

Gibson also appears to take issue with the use of OC spray. As stated *supra*, courts have found that the "use of chemical agents to subdue recalcitrant prisoners is not cruel and unusual when reasonably necessary." *Gibson*, 837 F. App'x at 862. Gibson has not alleged that the OC spray was used in a greater quantity than necessary or that he suffered any injuries "beyond the temporary discomfort of the OC spray." *Id.* Nor has he alleged that the use of OC spray posed a serious risk of harm to him, and that the Defendants were subjectively aware of such a risk.

The Court will grant Defendants' motion to dismiss the Eighth Amendment failure to protect and failure to intervene claims.

### 4. *Conditions of Confinement Claim—Cell Conditions*

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care, and personal safety. *See Farmer*, 511 U.S. at 832; *Helling v. McKinney*, 509 U.S. 25, 31 (1993). To show that conditions of confinement violate the Eighth Amendment, a plaintiff bears the burden of proving two requirements: "(1) the deprivation alleged must be, objectively, 'sufficiently serious,'" resulting in the "denial of 'the minimal civilized measure of life's necessities,'" and "(2) the 'prison official must have a sufficiently culpable state of mind.'" *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020)

(quoting *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 299, 302-303 (cleaned up)); *McClure v. Haste*, 820 F. App'x 125, 128 (3d Cir. 2020).  Only "extreme deprivations" are sufficient to present a claim for unconstitutional conditions of confinement.  *Fantone v. Herbik*, 528 F. App'x 123, 127 (3d Cir. 2013) (quoting *Hudson*, 503 U.S. at 8-9).

To satisfy the first requirement, Gibson "must show that he is incarcerated under conditions posing a substantial risk of serious harm," but he need not show actual injury. *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 373 (3d Cir. 2019) (internal quotations omitted)).  "The proof necessary to show that there was a substantial risk of harm is less demanding than the proof needed to show that there was a probable risk of harm."  *Id.* (quoting *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015)).  "This is a totality-of-the circumstances analysis" and should consider the duration and severity of the unconstitutional conditions.  *McClure*, 820 F. App'x at 128.

It is well-established that there is no constitutional right for an inmate to be celled in a particular place, or under particular circumstances.  "[B]y virtue of their convictions, inmates must expect significant restrictions, inherent in prison life, on rights and privileges free citizens take for granted."  *McKune v. Lile,* 536 U.S. 24, 39-40 (2002); *Podhorn v. Grondolsky*, 350 F. App'x 618, 620 (3d Cir. 2009) ("[P]risoners have no constitutional right to be assigned to a particular institution, facility or rehabilitative program.").  Rather, "the prison has a penological interest in the housing placement of its inmates and '[i]t is well

settled that the decision where to house inmates is at the core of prison administrators'

expertise.'" *Thomaston v. Meyer*, 519 F. App'x 118, 119 (3d Cir. 2013) (quoting *McKune*,

536 U.S. at 39).

Here, the Court finds that Gibson failed to allege an excessive risk to his health or

safety and failed to establish that any of the Defendants were subjectively aware of facts

from which the inference could reasonably be drawn that his health or safety were at risk.

In the second amended complaint, Gibson alleges that he was placed in a cold cell.

(Doc. 63 ¶ 34). He does not allege that he suffered any harm because of his cold cell. Nor

does not allege that was not provided food, water, adequate clothing, ability to use the toilet,

exercise, evaluation by mental health and medical professionals, or review by prison

officials. Taking the allegations together, the Court finds that Gibson has not established

the objective element of his claim, i.e., that the allegations rise to the level of conduct that

may be deemed inhumane or resulted in the deprivation of the minimal civilized measures

of the necessities of life. *See Bracey v. Sec'y Pa. Dep't of Corr.*, 686 F. App'x 130, 136 (3d

Cir. 2017) (allegedly cold conditions in cell did not violate the Eighth Amendment, absent

showing that conditions were extreme or that prison officials were deliberately indifferent);

*Burkholder v. Newton*, 116 F. App'x 358 (3d Cir. 2004) (noting that Eighth Amendment

claims have been rejected when much harsher conditions than a cold and unsanitary cell

have been alleged).

21

As to the second requirement, Gibson must show "that the prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" *Porter*, 974 F.3d at 444 (citations omitted). The second element is subjective, and the "prison official must both know of and disregard an excessive risk to inmate health and safety." *Mammana*, 934 F.3d at 373. "In other words, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837). Even assuming that the Defendants knew about the cold cell, the alleged conditions were not so inhumane as to pose a serious risk of harm. Further, Gibson does not allege that Defendants acted maliciously or sadistically in subjecting him to the conditions of the cell. Gibson has failed to support a finding on the subjective prong of the Eighth Amendment regarding his conditions of confinement claim. The Court will dismiss the Eighth Amendment conditions of confinement claim.

### C.    First Amendment Retaliation Claim

To state a retaliation claim under the First Amendment, a plaintiff bears the burden of satisfying three elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." *Id.* (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary

22

firmness' from exercising his First Amendment rights." *Id.* (quoting *Suppon v. Dadonna*, 2013 F.3d 228, 235 (3d Cir. 2000)).  Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." *Rauser*, 241 F.3d at 333-34 (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events.  *See Lape v. Pennsylvania*, 157 F. App'x 491, 498 (3d Cir. 2005) (nonprecedential).  Only when the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, on its own, support an inference of causation.  *See Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997).  The Third Circuit has noted that an inmate can satisfy this burden "with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2002).

If a prisoner establishes a *prima facie* case of retaliation, the burden shifts to prison officials to show, by a preponderance of the evidence, that "they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser*, 241 F.3d at 334.  "This is often referred to as the 'same decision defense.'" *Watson*, 834 F.3d at 422.  If the prison officials can make this showing,

23

it defeats the retaliation claim. *See Carter v. McGrady*, 292 F.3d 152, 159 (3d Cir. 2002).

With these elements in mind, the Court will address Gibson's retaliation claims.

Gibson alleges that Defendants Mayernick, Rodak, and Derr retaliated against him for filing grievances by calling him a "snitch" and verbally threatening him. (Doc. 63, p. 8 ¶¶ 40-41).

Even assuming that Gibson has satisfied the first *Rauser* prong—as filing of an inmate grievance constitutes a constitutionally protect activity—in accepting as true all factual allegations set forth in the second amended complaint, it is clear that Gibson failed to meet the second *Rauser* element. *See Fantone v. Latini*, 780 F.3d 184, 192 n.8 (3d Cir. 2015) ("The filing of a prison grievance is an activity protected by the First Amendment.")). Generally speaking, verbal threats and harassment do not constitute adverse action for purposes of establishing a First Amendment retaliation claim. *See Dunbar v. Barone*, 487 F. App'x 721, 723 (3d Cir. 2012) (nonprecedential); *Burgos v. Canino*, 358 F. App'x 302, 306 (3d Cir. 2009) ("[T]hreats alone do not constitute retaliation…the claim relating to the threat failed."). Because Gibson has not identified an adverse action sufficient to deter an ordinary person from exercising his First Amendment rights—the second element of a retaliation claim—his claim fails. The Court will dismiss the First Amendment retaliation claim.

### D.    Supervisory Liability Claim against Mason and Stetler

Gibson contends that the supervisory Defendants—Mason and Stetler—failed to provide adequate and proper training. (Doc. 63 ¶¶ 36, 41). "A supervising authority may be liable under § 1983 for failing to train…when the failure to train demonstrates deliberate indifference to the constitutional rights of those with whom the officers may come into contact." *Gilles v. Davis*, 427 F.3d 197, 207 n. 7 (3d Cr. 2005) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). To prevail, the plaintiff must "identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred." *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997). In the failure to train context, deliberate indifference can be established by demonstrating that: "(1) [the supervisor knew] that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Logan v. Bd. of Educ. of Sch. Dist. of Pittsburgh*, 742 Fed. Appx. 628, 632 (3d Cir. 2018) (quoting *Doe v. Luzerne County*, 660 F.3d 169, 179 (3d Cir. 2011)). *See also Van Valen v. Lanigan*, 2019 WL 1326887, at *6 (D.N.J. Mar. 25, 2019) (noting that a plaintiff must "show that policymakers were on actual or constructive notice that flaws in their training or supervision caused subordinate officials to violate citizens' constitutional rights, and such notice generally requires contemporaneous knowledge of an incident or

25

knowledge of a prior pattern of similar incidents and circumstances.") (citing *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

Though not entirely clear, Gibson implies that the supervisory Defendants failed to provide proper training as to the appropriate use of OC spray. (Doc. 63 ¶ 36). He has also alleged a causal connection between his injuries (which allegedly stemmed from the use of OC spray) and the absence of that specific training. Gibson has failed, however, to plead any facts from which the Court might infer that the absence of that training "reflect[ed] a deliberate indifference to whether the alleged constitutional deprivations occurred." *Reitz*, 125 F.3d at 145. For example, there is nothing in the pleadings to suggest the use of OC spray was improper, such that Mason and Stetler should have been aware that correctional officers had a history of abusing OC spray. Rather, Gibson concedes that the December 5, 2020 use of OC spray was part of a planned used of force incident—though it is not entirely clear what prompted the planned use of force—and, thus, not improper. (Doc. 63 ¶ 27). In the absence of such allegations, Gibson's failure to train claim must fail.

To the extent that Gibson seeks to impose liability on Defendants Mason and Stetler based on their roles as Superintendent and Deputy Superintendent of SCI-Mahanoy, this claim likewise fails. It is well-established that officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior*, and Defendants Mason and Stetler cannot be held liable solely based upon their respective

supervisory roles of Superintendent and Deputy Superintendent. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). Any such claim will be dismissed.

### E.   Conspiracy Claim

In order to demonstrate a conspiracy, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'" *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa.*, 316 F.3d 392, 400 (3d Cir. 2003). "Bare conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred." *Flanagan v. Shively*, 783 F.Supp. 922, 928 (M.D. Pa. 1992). The plaintiff's allegations of a conspiracy "must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each Defendant allegedly played in carrying out those objectives." *Id.*

Gibson concluded that the Defendants have conspired to violate his rights, yet he has failed allege an agreement or plan formulated and executed by the Defendants to achieve this conspiracy. (Doc. 63 ¶¶ 16, 38). Gibson's vague allegations fail to satisfy the specific pleading requirements set forth above. For example, in a conclusory fashion, the second amended complaint states that, "[a]t all times, all defendants were acting in concert

27

and conspiring." (*Id.*). Gibson does not identify the individuals who allegedly engaged in this conspiracy, and his claims amount to nothing more than mere conjecture and bare speculation. The law is clear that bare allegations of wrongdoing by a defendant, without any substantiating proof of an unlawful agreement, are insufficient to sustain a conspiracy claim. *See Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991) (holding that conspiracy claims which are based upon a *pro se* plaintiff's subjective suspicions and unsupported speculation are properly dismissed under § 1915(d)). The second amended complaint lacks any allegations revealing the existence of an agreement designed to deny the constitutional rights of Gibson. *See Hodge v. United States*, 2009 WL 2843332, *11 (M.D. Pa. 2009) (dismissing plaintiff's "broad" conspiracy claim because "he does not aver facts sufficient to establish an agreement between the individual defendants to deprive plaintiff of his rights or from which such an agreement could reasonably be inferred"). As such, the Court will dismiss the conspiracy claim.

### F. Medical Malpractice Claim

In Pennsylvania, medical negligence, or medical malpractice, is defined as "the unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services." *Toogood v. Owen J. Rogal, D.D.S., P.C.*, 824 A.2d 1140, 1145 (Pa. 2003) (citing *Hodgson v. Bigelow*, 7 A.2d 338 (Pa. 1939)). The existence of an injury, by itself, does not prove a doctor's negligence. *Mitchell v. Shikora*, 209 A.3d 307,

315 (Pa. 2019) (citations omitted). Rather, to establish a cause of action for negligence under Pennsylvania law, a plaintiff must prove the following elements: (1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages. *See Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 139 (3d Cir. 2005) (citing *In re TMI*, 67 F.3d 1103, 1117 (3d Cir. 1995)).

Pennsylvania Rule of Civil Procedure 1042.3 requires a plaintiff alleging professional negligence to file a certificate of merit within 60 days of filing the complaint. PA. R. CIV. P. 1042.3. The certificate must include one of the following: a written attestation by "an appropriate licensed professional" that there is a "reasonable probability that the care, skill or knowledge exercised or exhibited" by the defendant "fell outside acceptable professional standards," and that this was the cause of the plaintiff's injuries; a statement that the claim against the defendant is based only on the professional negligence of those for whom the defendant is responsible; or a statement that expert testimony is unnecessary for the plaintiff's claim to proceed. PA. R. CIV. P. 1042.3(a)(1)-(3). Failure to file a certificate of merit is fatal to a plaintiff's claim. PA. R. CIV. P. 1042.7. The requirements of Rule 1042.3 are substantive in nature and, therefore, federal courts in Pennsylvania must apply these prerequisites of Pennsylvania law when assessing the merits of a medical malpractice claim. *See Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 262-65 (3d Cir. 2011); *Iwanejko v. Cohen & Grigsby, P.C.*, 249 F. App'x 938, 944 (3d Cir. 2007). This requirement

applies with equal force to counseled complaints and to *pro se* medical malpractice actions brought under state law. *See Hodge v. Dep't of Justice*, 372 F. App'x 264, 267 (3d Cir. 2010) (affirming district court's dismissal of medical negligence claim for failure to file a certificate of merit).

The Pennsylvania Supreme Court has noted that "[b]ecause the negligence of a physician encompasses matters not within the ordinary knowledge and experience of laypersons[,] a medical malpractice plaintiff must present expert testimony to establish the applicable standard of care, the deviation from that standard, causation and the extent of the injury." *Toogood*, 824 A.2d at 1145.  A very narrow exception applies "where the matter is so simple or the lack of skill or care is so obvious as to be within the range of experience and comprehension of even non-professional persons." *Hightower-Warren v. Silk*, 698 A.2d 52, 54 n.1 (Pa. 1997).

The Corrections Defendants seek to dismiss Gibson's medical malpractice claim based on his failure to comply with Pennsylvania's certificate of merit requirements.  There is no indication that counsel for the Corrections Defendants mailed Gibson a Notice of Intent to Dismiss pursuant to Pennsylvania Rule of Civil Procedure 1042.7.  Because the Corrections Defendants failed to attach proof that a Notice of Intent to Dismiss for failure to file a certificate of merit was served upon Gibson, the Court must deny the motion on this

ground.[2]  *See Schmigel v. Uchal,* 800 F.3d 113, 123 (3d Cir. 2015) (holding that "the condition of thirty days' notice prior to seeking dismissal of an action for failure to comply with the COM regime is substantive and must be applied in federal court").

### G.   Intentional Infliction of Emotional Distress

Gibson also alleges that he suffered "emotional distress" as a result of the December 2020 incident.  (Doc. 63 ¶ 43).  Under Pennsylvania law, Gibson must plead four elements to state a claim for intentional infliction of emotional distress: (1) the defendant's conduct "was extreme and outrageous"; (2) the defendant's conduct "caused [the plaintiff] severe emotional distress"; and that (3) the defendant " acted intending to cause [the plaintiff] such distress or with knowledge that such distress was substantially certain to occur." *Brown v. Muhlenberg Twp.,* 269 F.3d 205, 217 (3d Cir. 2001)).  Liability is only imposed "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Reedy v. Evanson*, 615 F.3d 197, 231-32 (3d Cir. 2010) (quoting *Field v. Phila. Elec. Co.,* 565 A.2d 1170, 1184 (Pa. Super. Ct. 1989)).

The Corrections Defendants argue that, to the extent the second amended complaint is construed as raising a state law claim for intentional infliction of emotional distress, it fails to allege sufficient facts to show the outrageous or extreme conduct required to state a

---

[2]     Pennsylvania Rule of Civil Procedure 1042.6(b) provides that a judgment of non pros for failure to file a certificate of merit may be entered without notice if "(1) the court has granted a motion to extend the time to file the certificate and the plaintiff has failed to file it within the extended time, or (2) the court has denied the motion to extend the time." PA. R. CIV. P. 1042.6(b).  Neither circumstance applies here.

claim for relief. (Doc. 69, p. 33 n. 7). Even construing the complaint in the light most

favorable to Gibson, the allegations do not plausibly demonstrate that the Corrections

Defendants engaged in extreme or outrageous conduct. *See Reedy*, 615 F.3d at 231. The

Court will therefore grant the motion to dismiss insofar as it seeks dismissal of the state law

claim for intentional infliction of emotional distress.

### H.    Claims Against Defendant Liebersohn

Benjamin Liebersohn passed away on February 10, 2022. *See* Obituary for

Benjamin Allen Liebersohn, available at:

https://www.mccartythomas.com/obituaries/Benjamin-Liebersohn/#!/Obituary. The Court

takes judicial notice of Defendant Liebersohn's death in February of 2022. *See Hatten v.*

*Pennsylvania*, No. 2:13-cv-1302, 2013 U.S. Dist. LEXIS 170381, at *1-2 (W.D. Pa. Nov. 1,

2013) (taking judicial notice of the inmate-petitioner's obituary to dismiss his petition for

habeas corpus pursuant to 28 U.S.C. § 2254 as moot). Because Defendant Liebersohn

passed away prior to Gibson's initiation of the above-captioned case, Gibson was required

to name the personal representative of Defendant Liebersohn's estate if he wished to

pursue his claims. *See Darmanchev v. Roytshteyn*, 234 F.R.D. 78, 80 (E.D. Pa. 2005).

Gibson, however, did not do so. Accordingly, Defendant Liebersohn is not a proper party to

this action, and the Court will dismiss Gibson's claims against him. *See Spencer v. Varano*,

No. 3:17-cv-2158, 2018 WL 3352655, at *1 n.1 (M.D. Pa. July 9, 2018) (concluding the

same); *see also Lange v. Burd*, 800 A.2d 336, 341 (Pa. Super. 2002) ("A dead man cannot

be a party to an action, and any such attempted proceeding is completely void and of no effect.").

## IV.  **Leave to Amend**

When a complaint fails to present a prima facie case of liability, district courts must generally grant leave to amend before dismissing the complaint.  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).  Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile."  *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)).  Since Gibson has been afforded two prior opportunities to amend his complaint, the Court concludes that allowing giving leave to file a third amended complaint would be both futile and inequitable.  *See Grayson*, 293 F.3d at 108; *see also Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (where inmate plaintiff "has already had two chances to tell his story…giving him further leave to amend would be futile.").

V.    **Conclusion**

The Corrections Defendants' motion (Doc. 68) to dismiss will be granted in part and

denied in part.  A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: May _____, 2024