IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DERRICK GIBSON, | : | Civil No. 3:22-cv-1538 |
| Plaintiff | : | (Judge Mariani) |
| v. | : | |
| SUPERINTENDENT BERNADETTE MASON, *et al.*, | : | |
| Defendants | : | |

**MEMORANDUM**

Plaintiff Derrick Gibson ("Gibson"), an inmate housed, at all relevant times, at the State Correctional Institution, Mahanoy, Pennsylvania ("SCI-Mahanoy"), commenced this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). The matter is proceeding via a second amended complaint. (Doc. 63). The remaining Defendants are Lieutenant Wagner, Correctional Officer Robert Derr, Correctional Officer Swartz, and Nurse Julie Rodak (collectively, the remaining "Corrections Defendants").

The parties are intimately familiar with the facts and procedural history of this case, and they need not be discussed at length. Briefly, while housed at SCI-Mahanoy on December 5, 2020, an incident occurred between Gibson and several prison staff members. (*See* Docs. 103, 119). The incident ultimately led to an unplanned use of force by prison officials, including the use of oleoresin capsaicin ("OC") spray and placement of Gibson in a

restraint chair. (*See id.*). Discovery has concluded and the Corrections Defendants have moved for summary judgment.[1] (Doc. 102).

Presently before the Court is Gibson's motion (Doc. 141) for sanctions. For the reasons set forth below, the Court will deny the motion for sanctions.

## I. Motion for Sanctions

Gibson filed a motion for sanctions based on the spoliation of evidence. (Doc. 141). He alleges that the Corrections Defendants failed to preserve audio and videotape footage and inappropriately withheld documentary evidence. (Docs. 141, 142). Specifically, Gibson alleges that the Corrections Defendants: failed to preserve relevant audio and video of an in-cell camera and fixed surveillance from December 5 through 10, 2020 (Doc. 141 ¶ 10); failed to preserve video of officers placing his grievances in the HA pod lock box, failed to preserve video of Gibson handing his grievances to officers through the HA 12 cell door between December 21 to 31, 2020, and failed to preserve video of staff collecting grievances from the lockbox during that time (Doc. 141 ¶¶ 13, 19, 20); failed to preserve audio and video of physician assistant O'Brien's visits to his cell on December 8, 2020 (Doc. 141 ¶ 18); and failed to preserve video evidence of Deputy Superintendents White and Stetler from December 10, 2020 at Gibson's cell providing notice of a Plan of Action (Doc. 141 ¶ 27).

---

[1] The Court will address the Corrections Defendants' Rule 56 motion by separate Memorandum and Order.

Gibson further alleges that the Corrections Defendants withheld the H-unit entrance logbook for December 5 to 31, 2020, and withheld the HA pod security level 5 housing unit log from December 5, 2020 (Doc. 141 ¶¶ 14, 15, 16, 17, 21, 22, 26); failed to disclose evidence of Correctional Officers Rebarchak, Mayernick and Sergeant Adams' presence on HA pod on December 5, 2020 (Doc. 141 ¶¶ 15, 16); failed to preserve a copy of the SCI-Mahanoy "grievance reception logbook" from December 21 through 31, 2020, or the number of grievances received during that time frame (Doc. 141 ¶ 23); and failed to provide evidence of Deputy Superintendent Stetler, Correctional Officer Mayernick, and any other named Defendant's, discipline, retirement, or termination due to an incident involving inmate Tyrone Briggs (Doc. 141 ¶ 25).

Spoliation occurs not only where "evidence is destroyed or altered" but also "when a party fails to preserve evidence in instances where litigation is pending or reasonably foreseeable." *United States v. Nelson*, 481 F. App'x 40, 42 (3d Cir. 2012) (citations omitted). The Third Circuit established a four-part test to determine whether spoliation occurred. "Spoliation occurs where: (1) the evidence was in the party's control; (2) the evidence is relevant to the claims or defenses in the case; (3) there has been actual suppression or withholding of evidence; and (4) the duty to preserve the evidence was reasonably foreseeable to the party." *Bull v. UPS*, 665 F.3d 68, 73 (3d Cir. 2012). "As to the third element concerning suppression or withholding of evidence, 'a finding of bad faith'—which may be inferred from circumstantial evidence—is 'pivotal' to determining

3

whether 'sanctionable spoilation' has occurred." *Cascella v. United States*, 2023 WL 2539655, *1 (M.D. Pa. Mar. 16, 2023) (quoting *Bull*, 665 F.3d at 79).

A party seeking spoliation sanctions must establish the requisite elements by a preponderance of the evidence. *See Hoffer v. Tellone*, 128 F.4th 433, 440 (2d Cir. 2025). The Court must find each part of the test satisfied before it can consider whether and what sanctions are appropriate. *See Bull*, 665 F.3d at 73 n.5 (emphasizing distinction between sanctions and spoliations analyses).

The Court first addresses Gibson's claim regarding the audio and video evidence. There is no indication that the videotapes were intentionally damaged or destroyed. The Corrections Defendants maintain that, while the fixed surveillance cameras outside of Gibson's cell and the in-cell camera from HA 12 cell should have captured what occurred outside and inside HA 12 cell on December 5, 2020, no footage other than what has been provided to Gibson exists. (Doc. 143, at 10-13). Gibson was provided the following footage: (1) the handheld audio and video footage of the December 5, 2020 incident; (2) the OC spray decontamination and medical evaluation; (3) the release from the restraint chair on December 5, 2020; and (4) the moves in and out of restraint systems from December 5 through 9, 2020. Defendants maintain that the relevant audio and video footage of the incident in question was preserved and provided to Gibson. (*Id.*). They maintain further that any video footage from dates other than December 5, 2020 would have little relevance as to whether excessive force was used on December 5, 2025. (*Id.*).

4

It appears that all relevant audio and video footage was provided to Gibson. The additional video footage requested by Gibson was apparently not preserved and there is no evidence that any of the Corrections Defendants either intentionally lost or destroyed the video evidence in question. Moreover, the additional video footage that Gibson requests from December 6 to 10, 2020, and December 21 to 31, 2020, would have no bearing on the remaining claim in this action—the unplanned use of force on December 5, 2020.

To determine whether a spoliation sanction is appropriate, courts in the Third Circuit consider: (1) the spoliator's degree of fault; (2) the resulting prejudice to the opposing party; and (3) the availability of a lesser sanction that will both avoid substantial unfairness and, if necessary, serve to deter future spoliation. *See In re Hechinger Investment Co. of Delaware Inc.*, 489 F.3d 568, 579 (3d Cir. 2007); *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78 (3d Cir.1994).

In this case, the Corrections Defendants were not personally responsible for the operation and maintenance of the videotape system. The Corrections Defendants contend that members of the prison staff were responsible for the video, and they are not defendants in this case and no longer work for the DOC. (Doc. 143, at 10 n. 2). *See Baliotis v. McNeil*, 870 F.Supp. 1285, 1290 (M.D. Pa. 1994) (declining to impose sanctions against a blameless party for the actions of a third party).

Concerning prejudice, a similar scenario to the facts of this case occurred in *Larison v. City of Trenton*, 180 F.R.D. 261, 269-70 (D.N.J. 1998). In *Larison*, the court denied the

5

plaintiff's claim for spoliation of videotape evidence where the police routinely recycled videotape from their detention unit after several days unless it recorded a significant incident. The *Larison* court found there was no evidence that the police officers intentionally acted to impede the plaintiff's legal claim. That court stated:

> Plaintiff has asserted that the fact that defendant destroyed the videotapes and documentation creates an inference that such videotapes and documentation would incriminate defendants and thus mandates a finding that defendants intentionally destroyed the videotapes and documentation. Additionally, plaintiff contends that he could not have learned of this evidence without defendants' disclosure. The court notes there is a distinction between plaintiff not having access to the fact that videotapes existed, and the plaintiff not having access to the underlying facts contained on the videotapes. Although plaintiff may not have been aware that tapes were being generated, plaintiff, who was a participant in the events, obviously has first-hand knowledge of what the tapes would reveal. Thus, this is not a case of a party being deprived of the evidence necessary to prove his claims, but rather is a question of whether additional or better evidence may be available.

*Larison*, 180 F.R.D. at 268-69.

The instant case supplies similar facts. Concerning prejudice, as in *Larison*, "this is not a case of a party being deprived of the evidence necessary to prove his claims, but rather is a question of whether additional or better evidence may be available." *Id.* at 269. Gibson has not been materially prejudiced by not receiving those videotapes he seeks because they are not relevant to the events of December 5, 2020, and for the further reason that there is no evidence that there has been actual suppression or withholding of evidence. Furthermore, the record shows that Gibson has been provided with all relevant audio and video footage.

There is no indication that the Corrections Defendants were involved in sanctionable conduct with respect to the video footage, that Gibson is materially prejudiced by the missing videos, or that further spoliation may occur such that a sanction is warranted to prevent it. *See In re Hechinger Investment Co.*, 489 F.3d at 579.

The Court next considers Gibson's claim regarding the documentary evidence. The Corrections Defendants maintain that the visitor log showing who signed in to the RHU to collect grievances from December 5-31, 2020, was provided to Gibson as soon as it was located by SCI-Mahanoy staff. (Doc. 143, at 13). The Corrections Defendants next respond that the Security Level 5 Housing Unit Log DC-701 was provided to Gibson on November 6, 2024, in response to his second request for production of documents. (*Id.*). They next assert that Ms. Walter did not keep a "grievance reception logbook." (*Id.* at 14). Grievances were collected and entered into a department electronic database, which revealed that Gibson submitted two grievances between December 21-31, 2020 (numbers 907006 and 907358). (*Id.*). Those grievance records were provided to Gibson in response to his first request for production of documents. (*Id.*). Finally, the Corrections Defendants assert that any discovery requests regarding their purported involvement in an incident involving inmate Tyrone Briggs is irrelevant. (*Id.*).

With respect to the representations by the Corrections Defendants' counsel, the Court finds that counsel did not intentionally mislead Gibson and did not display bad faith in responding to these discovery requests. There is no indication that the Corrections

Defendants were involved in sanctionable conduct with respect to the documentary evidence.

## II. Conclusion

Based on the foregoing, the Court will deny Gibson's motion (Doc. 141) for sanctions. A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: July 14, 2025